IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

APRIL WHITE and BRUCE BOGACH,   )
individually, and on behalf of others   )
similarly situated,   )
  )
      Plaintiffs,   )
  )
v.   )     NO. 3:14-cv-1189
  )     JUDGE CAMPBELL
PUBLIX SUPER MARKETS, INC,   )
  )
      Defendant.   )

## MEMORANDUM OPINION

Pending before the Court is Defendant's Motion for Summary Judgment (Docket No. 143) and Plaintiffs' Cross Motion for Partial Summary Judgment (Docket No. 157).[1] The motions are fully briefed. For the reasons set forth herein, the Court will grant each party's motion in part and deny it in part.

## I.     Factual Background and Procedural History

Defendant Publix Super Markets, Inc. ("Publix") pays the hourly employees in its retail stores overtime in the amount of one and a half times their stated hourly rate for hours they work above forty hours in a week, as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* Defendant also provides its hourly employees the following six types of additional payments:

---

[1]The memorandum accompanying Plaintiffs' Cross-Motion for Partial Summary Judgment is combined with its brief in opposition to Publix's Motion for Summary Judgment and does not clearly distinguish between the issues on which it seeks judgment and any issues on which it merely opposes summary judgment for Publix. The Court interprets Plaintiff's motion as seeking judgment as to liability for each payment they allege should have been included in the regular rate, leaving damages as to any payment Plaintiffs prevail on to be determined later.

(1) a Retail Bonus that is paid quarterly to associates whose stores generate a profit in that quarter; (2) a Holiday Bonus paid in December to workers who are employed on the date the bonus is issued; (3) a "Holiday Benefit" that is extra pay for six holidays each year; (4) tuition reimbursement for associates engaged in course work that is related to their current job at Publix or of value in their potential career paths with Publix; (5) "Prevention Plus" prizes given to randomly-chosen employees who complete a safety or loss prevention quiz; and (6) "WIN" or "Change It" awards given to employees who offer unsolicited ideas about how Publix can improve its service or generate cost savings.

Plaintiffs, who are hourly employees of Publix in this judicial district, filed their Complaint on May 16, 2014, alleging that Publix violated the FLSA by not including these six forms of additional payments in the calculation of hourly employees' "regular rate," as defined by the FLSA, which in turn caused their overtime rate to be lower than it should have been. Plaintiffs seek to recover overtime pay, liquidated damages, prejudgment interest, costs, and attorney's fees under the FLSA. Plaintiffs bring this action on behalf of themselves and all those similarly situated and filed their "consent" to join this collective action under 29 U.S.C. § 216(b).

## II.    Standard of Review

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Pennington v. State Farm Mut. Automobile Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). "The moving party may satisfy this

burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating 'an absence of evidence to support the nonmoving party's case.'" *Id*. (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If the moving party is able to meet this initial burden, the non-moving party must then "set forth the specific facts showing that there is a genuine issue for trial." *Id.* (quoting Fed. R. Civ. P. 56(e)).

In deciding a motion for summary judgment, the Court must review all the evidence, facts and inferences in the light most favorable to the nonmoving party. *Tolan v. Cotton,* 572 U.S. ---- (2014), 134 S.Ct. 1861, 1866 (2014); *Van Gorder v. Grand Trunk W. R.R., Inc.*, 509 F.3d 265, 268 (6th Cir. 2007). The Court does not, however, weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id.* The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment; rather, there must be evidence on which the jury could reasonably find for the nonmoving party. *Rodgers*, 344 F.3d at 595 (quoting *Anderson*, 477 U.S. at 252). "As to materiality, the substantive law will identify which facts are material. Only disputes over fact that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

## III.    Legal Analysis

The FLSA requires an employer to pay a premium of "not less than one and one-half times the regular rate at which [an employee] is employed" for hours worked over 40 in a week. 29 U.S.C. § 207(a). The calculation of an employee's "regular rate" generally includes "all remuneration for

employment paid to. . . the employee." 29 U.S.C. § 207(e). This general rule has exceptions, Sections 207(e)(1)–(8), which "are to be interpreted narrowly against the employer, and the employer bears the burden of showing that an exception applies." *Newman v. Advanced Tech. Innovation Corp.,* 749 F.3d 33, 36 (1st Cir. 2014) (quoting *O'Brien v. Town of Agawam,* 350 F.3d 279, 294 (1st Cir. 2003)); *accord Acton v. City of Columbia, Mo.*, 436 F.3d 969, 976 (8th Cir. 2006); *Madison v. Res. for Human Dev., Inc.*, 233 F.3d 175, 187 (3rd Cir. 2000). There is no dispute that Defendant is subject to the requirements of the FLSA. Defendant claims that each of the payments Plaintiffs allege should have been included in the calculation of their "regular rate" falls within one of these statutory exceptions.

A.      **Holiday Bonus**

The Associate Handbook Publix provides to its hourly employees explains that "[t]he purpose of the holiday bonus is to reward you for your contributions to the company for the calendar year. . . . The holiday bonus is generally paid in December." Docket No. 146-4 at 4 (Associate Handbook). The Holiday Bonus is essentially a longevity bonus, as an employee's bonus increases with length of employment.

Publix argues that the Holiday Bonus is properly excluded from the regular rate because it is a gift under Section 7(e)(1) of the FLSA. Section 7(e)(1) exempts from the regular rate:

> sums paid as gifts; payments in the nature of gifts made at Christmas time or on other special occasions, as a reward for service, the amounts of which are not measured by or dependent on hours worked, production, or efficiency.

29 U.S.C. § 207(e)(1).

Plaintiffs counter that the holiday bonus cannot be characterized as a gift under this section because Publix's Associate Handbook creates a contractual right to the bonus. Plaintiffs argue that

4

the following facts support a finding that the Associate Handbook creates a contractual duty for Publix to pay the Holiday Bonus: (1) the Handbook has detailed charts that explain how the amount of the Holiday Bonus is determined, including a monthly accrual chart, *id*. at 4–7: (2) the Handbook provides that if Publix advances the Holiday Bonus to an employee before it has fully accrued and that individual's employment ends on or before the date the bonus actually accrues, the employee must repay Publix the amount that had not yet accrued, *id.* at 8; and (3) Publix's 30(b)(6) witness testified that Publix is "obligated" to pay the Holiday Bonus to any eligible employee who remains employed on the payroll through the issue date, Docket No. 173 at 25, ¶ 54. (Publix's Resp. to Pl.'s Amended Statement of Undisputed Material Facts ("SUMF")). As to this last fact, Publix disputes that it is "obligated" to pay the bonus but concedes that it does, in fact, give the bonus to employees who meet the eligibility criteria of being employed on the date the bonus is paid. *Id.*

Upon receipt of the Handbook, each Publix employee was required to sign a form acknowledging receipt of the Handbook which explicitly states, "This handbook is not a contract of employment." Docket No. 146-6 at 4 (Handbook Acknowledgment Form signed by Plaintiff Bogach). It also states that "Publix reserves the right to modify, amend, eliminate, or deviate from any or all policies, procedures and practices without prior notice...." *Id.* Plaintiffs in this matter each signed this acknowledgment form. *Id.* Based on this explicit disclaimer that the handbook did not create a contract and that Publix maintained the right to modify the policies at any time, the Court finds that the Associate Handbook did not create contractual rights in this case. *See, e.g.,Gertsch v. City of Martin, Tenn.,* No. 1:12-CV-01277-JDB, 2014 WL 1572786, at *4 (W.D. Tenn. Apr. 17, 2014) (collecting Tennessee cases so holding); *Adcox v. SCT Prods.*, No. 01A01–9703–CV–00123, 1997 WL 638275, at *3 (Tenn.Ct.App. Oct.17, 1997) ("Where an employee handbook specifically

provides that it is not a contract and reserves to the employer the unilateral right to amend the handbook's provisions, such handbook does not, as a matter of law, constitute part of the employment contract between the employer and the employee.").[2] The cases cited by Plaintiffs to the contrary are distinguishable. For example, Plaintiffs cite *Hamby v. Genesco, Inc*., 627 S.W.2d 373 (Tenn. Ct. App. 1981), for the proposition that a handbook "setting forth required criteria and pre-determined payment amount, creates a contract right, express or implied to the bonus." Yet the handbook discussed in *Hamby* contained no disclaimer. In fact, it stated on the first page that it contained "The Guaranteed Policies, Practices and Procedures" of the employer. *Id.* at 376.

Although the Court is not aware of a case directly on point in the Sixth Circuit, the Fifth Circuit has held that annual bonuses tied to longevity with the employer qualified as "sums paid as gifts" excludable from the regular rate. *Moreau v. Klevenhagen*, 956 F.2d 516, 521 (5th Cir. 1992). In *Moreau*, the annual bonus payments were "not measured by or dependent on hours worked, production or efficiency," and "serve[d] no purpose other than to reward the [plaintiffs] for their tenure as . . . employees." *Id.* In *Featsent v. City of Youngstown*, 70 F.3d 900 (6th Cir. 1995), the Sixth Circuit cited *Moreau* with approval, noting that *Moreau* "distinguish[ed] longevity payments that are 'sums paid as gifts,' which may be excluded from the regular rate, from those that are

---

[2]The Court also disagrees with Plaintiffs' assertion that the fact that the Handbook explains that Publix will recoup amounts of the Holiday Bonus that have been advanced to an employee that the employee had not yet accrued, in the event that the employee terminates his or her employment before accruing the full amount of the advance, creates a contractual right to the bonus. Additionally, neither the fact that the Handbook provides charts that detail the manner in which the bonus accrues to an employee nor the fact that Publix's 30(b)(6) witness concedes that Publix does, in fact, give Holiday Bonuses to its employees consistent with the provisions of the Handbook, create a contractual obligation.

required by an ordinance and a bargaining agreement, which may not be excluded from the regular rate." *Id.* at 905.

Plaintiffs cite *Featsent* in support of their position, but the longevity payments made in that case by the city of Youngstown, Ohio to its police officers were required by both a city ordinance and the governing collective bargaining agreement. *Id.* at 903 n.3, 905. Clearly, the city in *Featsent* could not argue that the longevity payments constituted a gift under Section 207(e)(1) because the payments in question were legally mandated and contractually required. As a result, the Court in *Featsent* analyzed the longevity payments under Section 207(e)(2) and found that they were not to be excludable under that section. *Id.* at 905. *Featsent* is inapplicable to the facts of the case before the court. Indeed, Plaintiffs argue at length that Publix's Holiday Bonus is not excludable under Section 7(e)(2) and cite numerous cases in support, in addition to *Featsent*, but Publix has not argued that the payments are excludable under that section.

For a gift given "as a reward for service" to be excludable from the regular rate under Section 7(e)(1), the amount of the gift also must not be "measured by or dependent on hours worked, production, or efficiency." 29 U.S.C. 207(e)(1). The amount Publix gives an employee for the Holiday Bonus does not depend on the hours worked before or after the receipt of the bonus. The employee is, in fact, free to terminate his or her employment with Publix immediately after receiving the bonus and, assuming Publix had not advanced him any bonus amounts he had not already accrued, he does not have to return any of the bonus to Publix. The Court concludes that the Holiday Bonuses payments Publix paid to Plaintiffs are excludable from the regular rate pursuant to Section 7(e)(1). Accordingly, the Court finds no genuine issue of material fact requiring further litigation on this issue and will enter judgment for Publix on this claim.

### B.      Holiday Pay

Publix gives employees an extra payment for six holidays each year. That payment consists of eight hours of pay at the employee's usual hourly rate, paid in a lump sum. Docket No. 173 at 28, ¶ 60 (Publix's Resp. to Pl.'s Amended SUMF). Although Publix changed the attendance requirements for receiving Holiday Pay effective December 27, 2014, during the time period at issue in this case, Publix did not give an employee the Holiday Pay if the employee either (1) was scheduled to work the day before or the day after the holiday but failed to work at least fifty percent of the scheduled hours, or (2) was scheduled to work the day of the holiday but failed to work at least fifty percent of the scheduled hours. *Id.* at 27, ¶ 59. Employees on vacation or jury duty are treated as in compliance with the attendance requirement. *Id.* at 28, ¶ 60. Employees unable to work because of military leave do not receive Holiday Pay. *Id.* at 26–27, ¶ 58. Publix admits that it has attendance requirements related to Holiday Pay for the purpose of ensuring "that there is adequate staffing for the stores during its busiest weeks (holiday weeks)." *Id.* at 28, ¶ 60.

Publix argues that Section 7(e)(2) of the FLSA excludes the Holiday Pay from the regular rate. Section 7(e)(2) exempts from the regular rate

> payments made for occasional periods when no work is performed due to vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause; reasonable payments for traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer; and other similar payments to an employee which are not made as compensation for his hours of employment;

29 U.S.C. § 207(e)(2). Publix argues that the Holiday Pay is a payment made for occasional periods when no work is performed and cites Department of Labor regulations that provide as follows:

> Payments which are made for occasional periods when the employee is not at work due to vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause, where the payments are in amounts approximately equivalent

to the employee's normal earnings for a similar period of time, are not made as compensation for his hours of employment. Therefore, such payments may be excluded from the regular rate of pay under section 7(e)(2) of the Act and, for the same reason, no part of such payments may be credited toward overtime compensation due under the Act

29 C.F.R. § 778.218(a). Publix also cites the following regulation:

As explained in § 778.218, certain payments made to an employee for periods during which he performs no work because of a holiday or vacation are not required to be included in the regular rate because they are not regarded as compensation for working. Suppose an employee who is entitled to such a paid idle holiday or paid vacation foregoes his holiday or vacation and performs work for the employer on the holiday or during the vacation period. If, under the terms of his employment, he is entitled to a certain sum as holiday or vacation pay, *whether he works or not*, and receives pay at his customary rate (or higher) in addition for each hour that he works on the holiday or vacation day, the certain sum allocable to holiday or vacation pay is still to be excluded from the regular rate. It is still not regarded as compensation for hours of work if he is otherwise compensated at his customary rate (or at a higher rate) for his work on such days. Since it is not compensation for work it may not be credited toward overtime compensation due under the Act.

29 C.F.R. § 778.219(a) (emphasis added).

Although Publix argues that it pays an employee the Holiday Pay "whether he works or not" as provided in 29 C.F.R. § 778.219(a), that is only true if the employee was not scheduled to work. If the employee was scheduled to work on the holiday, or on the day before or after the holiday, he must work in order to receive the Holiday Pay. The cases cited by Publix do not remedy this problem. First, Publix cites *Edwards v. City of New York*, No. 08 CIV. 3134 DLC, 2011 WL 3837130 (S.D.N.Y. Aug. 29, 2011), for the proposition that the FLSA excludes holiday pay when employees who worked on holidays received holiday pay *in addition* to their regular pay for the time worked. However, although the six-sentence discussion of this issue in *Edwards* affirms that "the FLSA expressly excludes payments for holidays when determining the regular rate of pay upon which the overtime rate is based," the opinion does not address whether the police officers at issue

in that case were required to work, if scheduled, on the eleven paid holidays, as a condition of receiving the holiday pay required by their collective bargaining agreement. *Id.* at *10. Without a discussion of that specific factual scenario, *Edwards* is of little assistance in the Court's analysis. Publix also cites *Lemieux v. City of Holyoke*, 740 F. Supp. 2d 246, 254 (D. Mass. 2010), for the proposition that "payments for accrued holiday and vacation time. . . are excludable." But again, although the case states that the "Department of Labor regulations explicitly provide that the 207(e)(2) exclusion applies even when an employee foregoes a day off but still receives the pay," *id.* (citing 29 C.F.R. § 778.219(a)), this case also has no discussion of the issue presented in this case, where an employer *requires* an employee to work on the holiday, if scheduled, in order to receive the holiday pay.

Publix also cites Department of Labor ("DOL") opinion letters it believes supports its position with respect to Holiday Pay. First, Publix cites a 1985 Opinion Letter for the proposition that payments are properly excluded from the regular rate under 29 C.F.R. § § 778.218–19 even when they are conditioned on the employee's attendance. U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter (Nov. 15, 1985), 1985 DOLWH LEXIS 10, at *3. The 1985 DOL Opinion Letter addresses a situation in which an employer wished to create a vacation policy such that employees who meet certain attendance standards, which are not specified in the letter, would be awarded one day of vacation for each calendar quarter for which the standards are met. *Id.* at *1. The proposed policy would allow the employee to either take the earned vacation day off with pay or forego the vacation day and receive both the compensation for the vacation day and also the regular compensation the hours worked on that day. *Id.* The employer wanted to know if the sums paid for the extra vacation days would be excludable from the employee's regular rates as payments made

for occasional periods when no work is performed due to vacation. *Id.* at *2. The DOL concluded that although the proposal is "somewhat of a hybrid compensation plan in that it has some aspects of an attendance bonus and some aspects of a vacation plan," it is more like an "annual leave plan" and as such excludable from the regular rate in the weeks or quarters in which they are made." *Id.* at *3. This opinion letter is readily distinguishable from Publix's Holiday Pay system. Although the plan addressed in the opinion letter conditioned receipt of the extra vacation days on compliance with employer-created attendance goals, the employer then paid the employee for any earned vacation time "whether he works or not," in compliance with 29 C.F.R. § 778.219(a). In contrast, Publix's plan required the employee to work on the actual holiday, if scheduled, to receive the Holiday Pay, which is contrary to the plain language of the governing regulations. Although the DOL found that the employer plan at issue in the 1985 Opinion Letter was an annual leave plan instead of an attendance bonus, Publix's plan is actually an attendance bonus, rewarding attendance on and around holidays for those who are scheduled to work during busy holiday business hours. The FLSA requires attendance bonuses to be included in the regular rate of pay. 29 C.F.R. § 778.211(c).

Next, Publix cites a 1983 DOL Opinion Letter that addresses a system in which an employer gives each employee a portion of his or her annual vacation pay and holiday pay depending on how many hours an employee works each week: "If the employee works less than 30 hours, she receives no benefit payments, if the employee works between 30 and 40 hours, s(he) [sic] receives a percentage of the benefit payments." U.S. Dep't of Labor Op. Ltr., 1983 DOLWH LEXIS 41, at *4–5 (September 7, 1983). The DOL concludes that "the vacation and holiday pro-rata payments would be excludable from the regular rate of pay computation" if the payments "represent bona fide

fringe benefits and are the cash equivalent" and if there is "a clear understanding between the employer and employees that the pro-rata payments in addition to their regular hourly rates of pay are payments in lieu of vacation and holiday pay." *Id.* As with the 1985 DOL Opinion Letter, this letter supports an employer's conditioning receipt of vacation and holiday pay on employer-created attendance goals, but does not address facts such as those presented in this case. The distinction between the employer plans presented in the opinion letters and the one facing the court is that the employees in the opinion letters have to meet employer-created attendance goals to earn the holiday or vacation pay, but then get paid the holiday/vacation pay whether or not they work on the earned holiday/vacation day. Publix's plan *requires* the employee to work on the holiday, if scheduled, in order to receive the holiday pay. The fact that some employees are not scheduled for work on the holiday (or are excused from work for various reasons) and so receive pay for the holiday even though they did not work does not render the payments excludable from the regular rate.

As previously discussed, the exceptions found in Section 7(e)(1)–(8) to the general rule that an employee's "regular rate" includes "all remuneration for employment paid to . . . the employee" "are to be interpreted narrowly against the employer, and the employer bears the burden of showing that an exception applies." *Newman v. Advanced Tech. Innovation Corp.,* 749 F.3d 33, 36 (1st Cir. 2014) (citation omitted). Publix has not met its burden of showing that the Holiday Pay, as structured during the time period at issue in this Complaint, falls within the plain language of Section 7(e)(2) or its implementing regulations. Section 7(e)(2) exempts from the regular rate "payments made for occasional periods when no work is performed due to vacation, holiday." The Holiday Pay is clearly not a payment made for a period when no work is performed due to a holiday,

as many employees are scheduled and *required* to work. The Court will enter judgment for Plaintiffs on this issue.

### C.    Tuition Reimbursement Program

Under Publix's Tuition Reimbursement Program, Publix will reimburse an employee for post-secondary education tuition costs if the employee meets the following requirements: complete at least six months of continuous service with Publix; maintain an average of at least ten hours per week; pursue an "approved area of study," which may include individual courses, occupational/technical programs, or undergraduate programs; maintain a minimum total job performance rating of "meets expectations/successful;" earn a grade of "C" or better in each reimbursed course; be deemed by the employee's store manager to be interested in staying at Publix; and remain employed at Publix when the reimbursement check is issued. A course will be approved if it directly affects the associate's ability to perform his or her current position. An occupational or technical program will be approved if it directly affects the associate's ability to perform his or her current position, prepares the associate to perform a future position within the associate's current business area, provides certification that is required or preferred based on the associate's current position or established career path or meets a business need. As to undergraduate programs, Publix provides a list of approved majors, but may approve others "if related to an associate's current position or established career path" at Publix. Docket No. 146-9 at 4–5 (Associate Handbook).

### 1.    29 U.S.C. § 203(m)– Definition of "Wages"

Publix argues that its tuition reimbursement payments are for the benefit of Publix, not the employee, and thus fall outside the definition of "wages" pursuant to 29 U.S.C. § 203(m), which provides the following: "'Wage' paid to any employee includes the reasonable cost, as determined

by the Administrator, to the employer of furnishing such employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such employer to his employees." The implementing regulation of this statutory provision helps explain the meaning of the term "facilities," as used in Section 3(m):

> "Other facilities," as used in this section, must be something like board or lodging. The following items have been deemed to be within the meaning of the term: Meals furnished at company restaurants or cafeterias or by hospitals, hotels, or restaurants to their employees; meals, dormitory rooms, and tuition furnished by a college to its student employees; housing furnished for dwelling purposes; general merchandise furnished at company stores and commissaries (including articles of food, clothing, and household effects); fuel (including coal, kerosene, firewood, and lumber slabs), electricity, water, and gas furnished for the noncommercial personal use of the employee; transportation furnished employees between their homes and work where the travel time does not constitute hours worked compensable under the Act and the transportation is not an incident of and necessary to the employment.

29 C.F.R. § 531.32(a). The regulation next specifies items that are *not* "facilities" within the meaning of Section 3(m) such as "[s]hares of capital stock in an employer company, representing only a contingent proprietary right to participate in profits and losses or in the assets of the company at some future dissolution date." 29 C.F.R. § 531.32(b). Last, the regulation gives examples of items that *are* "facilities" within the meaning of Section 3(m), but will not fall within FLSA's definition of "wages" because they are "primarily for the benefit of the employer," and thus are unreasonable:

> It should also be noted that under § 531.3(d)(1), the cost of furnishing "facilities" which are primarily for the benefit or convenience of the employer will not be recognized as reasonable and may not therefore be included in computing wages. Items in addition to those set forth in § 531.3 which have been held to be primarily for the benefit or convenience of the employer and are not therefore to be considered "facilities" within the meaning of section 3(m) include: Safety caps, explosives, and miners' lamps (in the mining industry); electric power (used for commercial production in the interest of the employer); company police and guard protection; taxes and insurance on the employer's buildings which are not used for lodgings furnished to the employee; "dues" to chambers of commerce and other organizations used, for example, to repay subsidies given to the employer to locate his factory in a particular community; transportation charges where such transportation is an

incident of and necessary to the employment (as in the case of maintenance-of-way employees of a railroad); charges for rental of uniforms where the nature of the business requires the employee to wear a uniform; medical services and hospitalization which the employer is bound to furnish under workmen's compensation acts, or similar Federal, State, or local law.

29 C.F.R. § 531.32(c).

Publix argues that every aspect of its Tuition Reimbursement Program, from the hours an employee is required to continue working at Publix, to the job performance level requirement, to the grade requirement, to the approved courses of study, is designed to ensure that the program ultimately benefits Publix, and thus, falls outside the definition of "wages" under the statute and implementing regulations. Although Publix cites 29 U.S.C. § 203(m) and 29 C.F.R. § 531.32, it offers no case law to support its argument that a benefit such as a tuition reimbursement payment is outside FLSA's definition of wages. In fact, other than making the general argument that tuition reimbursement is for the benefit of Publix, it is not clear how Publix believes 29 C.F.R. § 531.32 supports its position. Tuition reimbursements are clearly not comparable to the items listed in 29 C.F.R. § 531.32(c) such as safety caps, explosives, miners' lamps, electric power, or security guards, that the regulation gives as examples of things that are primarily for the benefit of the employer. If anything, tuition reimbursements are most comparable to "tuition furnished by a college to its student employees" which is listed in 29 C.F.R. § 531.32(a) as falling within the category of "other facilities" which are, in fact, included in FLSA's definition of wages. Nonetheless, the Court finds that Publix's tuition payments are not comparable to "tuition furnished by a college to its student employees," because that item, as with the other items listed in 29 C.F.R. § 531.32(a), are all in-kind benefits offered by employers at the employers' facilities. In contrast, Publix's tuition reimbursement is a monetary reimbursement for something obtained by a Publix employee that is

not provided at Publix's facility. Indeed, the Court concludes that tuition reimbursement payments are not "facilities" as that term is used in Section 3(m) at all, either ones that are for the benefit of the employee or ones that are for the benefit of the employer. Accordingly, Publix's argument that the tuition reimbursements are not within the FLSA definition of "wages" because they are "facilities" that are for the benefit of the employer is without merit.

### 2.     29 U.S.C. § 207(e)(2) Exclusions From the Regular Rate

The Court turns next to consideration of whether Section 7(e)(2) of the FLSA excludes the tuition reimbursements from the regular rate. Section 7(e)(2) exempts from the regular rate:

> payments made for occasional periods when no work is performed due to vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause; reasonable payments for traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer; and other similar payments to an employee which are not made as compensation for his hours of employment

29 U.S.C. § 207(e)(2).

Publix cites a 1994 DOL Opinion Letter that addressed a tuition reimbursement plan provided to employees of a school district to cover course work that "may or may not be related to [the employee's] work (but it usually does)," "includes communication and language skills," and "can qualify a nonexempt employee for a future upgrade or promotion." U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter (June 28, 1994), 1994 WL 1004844, at *1. The DOL concluded that these tuition reimbursement payments are excludable from the regular rate under section 7(e)(2):

> In answer to your clients [sic] other concerns about tuition reimbursement and compensation for satisfactory completion of course work (semester hours), it is our opinion that these payments may be excluded from the regular rate of pay under section 7(e)(2) of the FLSA. These payments, unlike a bonus offered as an incentive for performance or attendance on a job, are not made for hours included in the employees' regular hours of work. They serve to reimburse employees, who are acquiring knowledge that will be of mutual benefit to them and the employer, for the

value which inures to the employer from the employees giving up a portion of their own time for the purpose.

*Id.* at *2.

Plaintiffs counter that tuition expenses are normally paid by an employee and are for the primary benefit of the employee and, as a result, must be included in the regular rate. They cite *Adoma v. Univ. of Phoenix, Inc*., 779 F. Supp. 2d 1126 (E.D. Cal. 2011), which held that the tuition reimbursement offered by the University of Phoenix, a private for-profit educational institution, was not excludable under Section 7(e)(2) from the regular rate. It found genuine issues of material fact existed as to whether the external tuition benefit constituted compensation for work. The Court disagrees with Plaintiffs' characterization that *Adoma* found the 1994 DOL Opinion Letter to be contrary to the FLSA and its regulations. Although the *Adoma* court did state that "[t]o the extent [the opinion letter] does conflict with the Ninth Circuit's interpretation of Subsection (e)(2) or the regulations, it is clearly erroneous," *id.* at 1137, the court concluded that the opinion letter does not necessarily conflict with the FLSA, its regulations, or Ninth Circuit case law:

> The DOL letter does not provide sufficient information from which the court can determine where the agency draws the line between a payment that primarily benefits the employer versus one that primarily benefits the employee. Without further information about the administration of the tuition benefit at issue in the DOL letter, the letter can provide only minimal guidance as to how courts should evaluate whether a particular tuition benefit must be included in the regular rate of pay. Suffice to say, the language of the letter does not contradict this court's understanding of the statute and regulations at issue in the instant case. The proper test for determining whether a payment must be included in the regular rate is whether such a payment is compensation for work. One determines whether a payment is compensation for work by considering whether the benefit primarily benefits the employee or the employer.

*Id.*

Plaintiffs also cite several cases in which courts held that employers could not exclude from the regular rate bonuses given to employees upon completion of a degree, which Plaintiffs argue is "no different, for the purposes of the FLSA regular rate analysis, than a tuition reimbursement program like the Publix's [tuition reimbursement program.] that only pays upon satisfactory completion of course work." Docket No. 169 at 27 (Plaintiff's Brief) (citing *O'Brien v. Town of Agawam*, 350 F.3d 279, 296–97 (1st Cir. 2003) ("[T]he increased pay that the officers receive once that education is completed" which "is nondiscretionary compensation guaranteed to the officers under their [collective bargaining agreement]" "must be included in the officers' regular rate because it is part of the 'remuneration for employment' paid to the officers.") (citing § 207(e)); *Featsent v. City of Youngstown*, 70 F.3d 900, 905 (6th Cir. 1995) ("Therefore, to the extent that the police officer's salaries do not account for their educational background, the bonuses attributable to education degrees compensate the plaintiffs for their services and cannot be excluded from the regular rate under Section 7(e)(2)."). The Court finds that Publix's tuition reimbursement program is distinguishable from the cases cited by Plaintiffs. Reimbursing an employee for the cost of tuition is analytically different than paying an employee a bonus upon completion of a degree.

Plaintiffs also argue that the 1994 DOL Opinion Letter cannot be relied on as a statement of binding agency policy or interpretation because it was issued by a Deputy Administrator instead of the Administrator. Plaintiffs represent that this position is supported by *Fazekas v. Cleveland Clinic Found. Health Care Ventures, Inc.*, 204 F.3d 673, 678 (6th Cir. 2000), but that case does not stand for the proposition that a Deputy Administrator's opinion letter is not a statement of binding agency interpretation. To the contrary, *Fazekas* itself notes "the holdings of this court and of our sister courts that the written opinions of the Administrator *or his deputies* constitute the most reliable

interpretations of the Department's regulations." *Id.* at 679 (citing cases) (emphasis added). This argument is without merit.

Although "ultimate decisions on interpretations of the act are made by the courts," 29 C.F.R. § 785.2, the DOL's opinion letters are "normally entitled to a high degree of deference," unless they are "plainly erroneous or are inconsistent with the regulations they interpret." *Imada v. City of Hercules*, 138 F.3d 1294, 1297 (9th Cir.1998). As the Supreme Court held:

> We consider the rulings, interpretations and opinions of the Administrator under the Fair Labor Standards Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier pronouncements, and all those factors which give it power to persuade, if lacking power to control.

*Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).

Although the 1994 Opinion Letter contains a very short analysis of this legal issue, the Court agrees with its conclusion that tuition reimbursements, depending on the nuances of how they are structured, may be excluded from the regular rate of pay under section 7(e)(2) of the FLSA. Based on the particular facts of Publix's tuition reimbursement plan, the Court concludes that the tuition reimbursement payments Publix makes to its employees are excludable from the regular rate of pay under section 7(e)(2). The facts that the Court finds important to this conclusion are the following: Publix seeks some indication that the employee requesting tuition reimbursement has a commitment to Publix, such that the employee must have completed at least six months of service with the company and be deemed by the store manager to have an interest in staying with the company; the courses are not provided by the employer itself (such that it is not a "facility" as discussed previously); the course work must relate to the employee's current position or other potential career

paths at Publix; and the student must meet a specified level of success in the course, in this case obtaining a grade of at least a "C." Based on these requirements imposed by Publix, its tuition reimbursement plan constitutes reimbursement of an expense incurred by an employee "in the furtherance of his employer's interests. . . which are not made as compensation for his hours of employment." 29 U.S.C. § 207(e)(2). The Court will enter judgment for Publix on this issue.

**D.      "Prevention Plus Awards"**

Publix gives $5 gift card prizes called "Prevention Plus Awards" to five randomly selected employees in each store who review loss-prevention materials on posters or computers and then complete a quiz on a safety or loss-prevention topic. Publix maintains that reviewing the loss-prevention materials and taking the Prevention Plus quizzes, on average, takes less than five minutes for each associate per month, and that failure to participate has no negative impact on an hourly employee's promotion or advancement opportunities.

Publix argues that these prizes are excludable under 29 U.S.C. § 207(e)(1) because that provision allows "sums paid as gifts . . . as a reward for service, the amounts of which are not measured by or dependent on hours worked, production, or efficiency." Publix also cites 29 C.F.R. § 778.332(a):

> Where the prize is awarded for activities outside the customary working hours of the employee, beyond the scope of his customary duties or away from the employer's premises, the question of whether the compensation is remuneration for employment will depend on such factors as the amount of time, if any, spent by the employee in competing, the relationship between the contest activities and the usual work of the employee, whether the competition involves work usually performed by other employees for employers, whether an employee is specifically urged to participate or led to believe that he will not merit promotion or advancement unless he participates.

Publix cites a 1994 DOL Opinion Letter that addressed "a program in which employees who have had perfect attendance for a quarter will have their names entered in a drawing. At the end of two quarters (twice a year) there would be a drawing from all the names entered to determine who would receive a prize consisting of a new car." U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter (August 6, 1996), 1996 DOLWH LEXIS 31, at *1. The opinion letter starts with the general rule that under 29 C.F.R. § 778.331, "gifts or prizes awarded to employees for their efforts in improving quality, quantity, efficiency or attendance are paid as additional remuneration for employment. Thus, the value of gifts or prizes paid to employees for 'perfect attendance' would normally be included in the employees' regular rate of pay." *Id.* But the opinion letter concludes as follows:

> In your situation, however, the employee simply becomes eligible to participate in a drawing or lottery for the prize, and we presume from the large value of the prize that an employee's likelihood of winning the prize is very small. Given these circumstances, we would not assert that any prize awarded under the lottery drawing conditions described in your letter would have to be included in calculating the regular rate for the employee selected for the award.

*Id.* at *1–2. These two sentences constitute the entire analysis of this issue contained in this opinion letter.[3]

---

[3]The Court is also not persuaded by Publix's argument that *Zator v. Sprint/United Mgmt. Co.*, No. 09CV0935-LAB MDD, 2011 WL 1157527 (S.D. Cal. Mar. 29, 2011), supports its position. Publix directs the Court to the *Zator* court's conclusion that the prizes (dinners with high level managers) given to top salespersons were properly excluded from the regular rate because the dinners were gratuitously awarded after work was completed based on criteria determined and announced afterwards. *Id.* at *4. The *Zator* court found its conclusion to be consistent with 29 U.S.C. § 207(e)(3)(a), a different exception than the one on which Publix relies. In any event, neither that statutory exception nor the *Zator* case is helpful to Publix, because the fact that Publix would give an award to an employee who had completed a Prevention Plus quiz and the amount of the payment was known to the employees ahead of time.

Although the dearth of analysis in the opinion letter is unhelpful, the Court concludes on the basis of the plain language of the regulation that the Prevention Plus prizes are excludable under Section 7(e)(1). Although there is some merit to Plaintiffs's contention that safety and loss prevention are connected to an employees' job responsibilities, the fact that the employees spend very little time on the activities required to enter the drawing coupled with the lack of evidence that any employee is "specifically urged to participate or led to believe that he will not merit promotion or advancement unless he participates" lead the Court to conclude that this prize is excludable from the regular rate. Furthermore, the fact that the completion of the quiz merely entitles an employee to be entered into a drawing makes this payment even more attentuated from the effort expended by the employee. The Court finds no genuine dispute of material fact requiring further litigation on this issue. Accordingly, the Court will enter judgment for Publix on this claim.

E.      **"WIN" and "Change It" Awards**

Publix gives "WIN" awards varying in amount from $20 to as much as $6,000 to hourly employees who submit project ideas in the categories of cost reduction, labor savings, and/or sales improvements. Docket No. 148 at 2 (Palmer Decl.). WIN ideas are initially submitted to the employee's store manager, and if the store manager believes the idea warrants further consideration, the employee further develops the proposal by generating documentation to support the project, studying a particular process, recommending changes to the process, and proposing ways to measure performance before and after the change is made. *Id.* at 3. Once the employee has completed the proposal, subject matter experts at Publix review the project and may give the employee a $20 Publix gift card. If the company decides to implement the idea in its stores, the employee is eligible for a further WIN award. Publix determines the amount of that second award based on the cost

savings and the degree to which the idea is implemented, such as whether it is implemented at a single store or company-wide.

In the Change It program, hourly employees also submit ideas for improvements in connection with store operations to either their store manager or to the district manager. If either individual thinks the idea is not potentially "adoptable," the employee receives no payment. If, however, the managers think the idea *is* potentially adoptable, they pass the idea to subject matter experts who work in the corporate-level office that has responsibility for the store departments impacted by the idea. If the subject matter experts think the idea is original and adoptable, Publix gives the employee a $10 Publix gift card. If Publix decides to implement the idea in its stores, the employee is eligible for a $100 Publix gift card and other prizes, such as electronics or a $300 Publix gift card. Adoptable and implemented suggestions typically include safety improvements, customer and associate service improvements, process improvements, productivity improvements, waste reduction, and energy conservation. *Id.* at 2.

Publix does not require its hourly employees to participate in the WIN and Change It awards programs. There is no time limit during which suggestions must be submitted. Each program is ongoing, and ideas and projects may be submitted at any time. Publix is usually unaware of the employee's suggestion or idea until the employee submits it. Between May 2011 and May 2015, Publix gave 238 hourly employees $9,060 in WIN awards and gave 55 hourly employees a total of $2,210 in Change It awards. *Id.* at 3.

Plaintiffs only argue that the *first* round of payments under these award programs should be included in the regular rate, because the first round of payments are fixed, non-discretionary amounts. Publix argues that these awards are excludable from the regular rate for two reasons. First,

Publix argues that the payments are excludable from the regular rate because they are suggestion system awards under the following FLSA regulation:

> The question has been raised whether awards made to employees for suggestions submitted under a suggestion system plan are to be regarded as part of the regular rate. There is no hard and fast rule on this point as the term "suggestion system" has been used to describe a variety of widely differing plans. It may be generally stated, however, that prizes paid pursuant to a bona fide suggestion system plan may be excluded from the regular rate at least in situations where it is the fact that:
>
> (a) The amount of the prize has no relation to the earnings of the employee at his job but is rather geared to the value to the company of the suggestion which is submitted; and
>
> (b) The prize represents a bona fide award for a suggestion which is the result of additional effort or ingenuity unrelated to and outside the scope of the usual and customary duties of any employee of the class eligible to participate and the prize is not used as a substitute for wages; and
>
> (c) No employee is required or specifically urged to participate in the suggestion system plan or led to believe that he will not merit promotion or advancement (or retention of his existing job) unless he submits suggestions; and
>
> (d) The invitation to employees to submit suggestions is general in nature and no specific assignment is outlined to employees (either as individuals or as a group) to work on or develop; and
>
> (e) There is no time limit during which suggestions must be submitted; and
>
> (f) The employer has, prior to the submission of the suggestion by an employee, no notice or knowledge of the fact that an employee is working on the preparation of a suggestion under circumstances indicating that the company approved the task and the schedule of work undertaken by the employee.

29 C.F.R. § 778.333.

Plaintiffs focus on the fact that the first round of payments under each award program are fixed amounts, which means they are not "geared to the value to the company" as required by 29 C.F.R. § 778.333(a). The Court disagrees. Publix only pays an employee under either award program if someone in management deems the suggestion to be of some value to the company. The Court

does not believe the FLSA requires employers to do such a nuanced calculation of the precise monetary value to the company of an employee suggestion as Plaintiffs envision. For example, Publix gives the example that a cashier submitted an idea to the Change It program to put a container at cash register checkout so cashiers can more easily recycle unused plastic shopping bags, rather than throwing them away. Publix thought this was an "adoptable" idea, so gave the cashier a $10 gift card. Docket No. 148 at 2 (Palmer's Decl.). That Publix values employee suggestions such as this one as being worth a $10 to $20 gift card to an employee is sufficiently "geared to the value of the company" to satisfy the FLSA regulations. These awards also meet the other requirements specified in 29 C.F.R. § 778.333(a). Because the Court finds the award amounts excludable from the regular rate under 29 C.F.R. § 778.333(a), the Court need not address Publix's argument that the awards are also excludable because they are discretionary, pursuant to 29 U.S.C. § 207(e)(3)(a) and 29 C.F.R. § 778.211. The Court will enter judgment for Publix on this claim.

## F. Retail Bonus

Plaintiffs argue that Publix failed to pay overtime on the Retail Bonus payments it paid to hourly employees as required by the FLSA. Publix argues that its Retail Bonus payments were percentage bonuses that included overtime pay as required by 29 U.S.C. § 207(a) or, alternatively, that the FLSA excludes retail bonus payments from the regular rate, and correspondingly from overtime calculations, under 29 U.S.C. § 207(e)(3).

Publix's Associate Handbook describes the Retail Bonus Plan as follows:

The Retail Bonus Plan is a profit sharing benefit that rewards retail associates for helping Publix generate sales and profits. . . In the retail bonus, there are no automatic or fixed bonuses. The amount of bonus that can be earned is impacted by the financial performance of the entire store, the financial performance of individual departments, and the individual performance of each of our associates. Be aware of the influence you can have on sales and profits! By doing the right thing, eliminating

waste, increasing productivity, and reducing mistakes, you can definitely influence sales and profits! . . . Retail bonuses are calculated at the end of each inventory period. . . [and] will generally be paid four times per year for each store. . . . The earnings that an associate's bonus is based on include

- regular pay (includes pay for time worked, jury duty, and bereavement)
- vacation pay (for time off)
- overtime pay
- pharmacy premium pay and
- premium pay for working on a Sunday or holiday.

Docket No. 147-2 at 4. A footnote indicates that "Publix intends to review the calculation of the retail bonus as conditions change and has the discretion to change the calculation of the bonus at any time. *Id.*

In contrast to the brief and general explanation contained in the Associate Handbook, the Manager's Reference Library ("MRL") contains forty pages of details about how the Retail Bonus is calculated. Docket No. 157-9 at 5 (DiGracia Dep. (*Ott*), 23:17–18). Gino DiGrazia, Vice President of Finance for Publix, concedes that the Associate Handbook is "a very highly-condensed summary" that does not adequately "explain how the bonus is calculated." *Id.* (23:20–23). It is unclear to the Court whether the MRL was available to hourly employees. In response to the deposition question, "The only document that tells an hourly associate how the retail bonus plan works is the handbook, correct, because they don't get the MRL?" Mr. DiGrazia responded, "They do not get the MRL, that is correct." Docket No. 157-10 at 23 (DiGrazia Dep (*White*) 45:18–21). Yet Publix represents that the MRL is a computer database that is available to store-level employees and that managers can provide information from the MRL about bonus calculations to hourly associates. Docket No. 172 at 17 (Publix's Response Brief). The only citation to the record Publix gives for this assertion is a quote from Mr. DiGrazia's deposition in which he said, "There is an MRL that is in the store available for the stores to view." *Id.* (citing Docket No. 149-1 at 8 (DiGrazia Dep. (*Ott.*),

80:23–81:1). The Court finds this statement ambiguous, particularly in light of Mr. DiGrazia's other deposition testimony affirming that hourly employees do not get the MRL.

Mr. DiGrazia explained the Retail Bonus Pay as follows in his deposition:

At the highest level, first of all, we determine how much we could afford to pay in the retail bonus plan, since it is a profit-based plan, making that determination on a total company level. We determine what factors we need to apply at the local store level to calculate the bonus for the quarter for that store. We have two main factors that we use in that detailed calculation to determine the allocation of the bonus. One factor is applied to sales, and the other factor is applied to what we call a bonus profit that is generated at store level.

Those two components, components [sic] . . . combine to calculate the total amount of the bonus that is available to be distributed to the eligible associates at that store. and as it relates to hourly associates, the calculation would be the total bonus that's eligible to be paid out at that store level, less a portion that's designated just for our management associates. That remaining amount is called the location pool, and that's the portion that all eligible associates in the store participate in, including our hourly associates. And it ends up being a percentage of that location pool that gets allocated to each associate based on their relative weighted pay.

Docket No. 157-10 at 4 (DiGrazia Dep. (*White*), 11:19–12:17).

Publix argues that its Retail Bonus payments included overtime pay as required by 29 U.S.C. § 207(a). Generally, employers must pay a premium of "not less than one and one-half times the regular rate at which [an employee] is employed" for hours worked over 40 in a week, 29 U.S.C. § 207(a). The FLSA regulations provide the following in a section titled "Percentage of total earnings as bonus:"

In some instances the contract or plan for the payment of a bonus may also provide for the simultaneous payment of overtime compensation due on the bonus. For example, a contract made prior to the performance of services may provide for the payment of additional compensation in the way of a bonus at the rate of 10 percent of the employee's straight-time earnings, and 10 percent of his overtime earnings. In such instances, of course, payments according to the contract will satisfy in full the overtime provisions of the Act and no recomputation will be required. This is not true, however, where this form of payment is used as a device to evade the overtime

requirements of the Act rather than to provide actual overtime compensation, as described in §§ 778.502 and 778.503.

29 C.F.R. § 778.210.

Plaintiffs argue that the Retail Bonus is not a percentage of an employee's "total earnings" as allowed by 29 C.F.R. § 778.210 because Publix does not include the payments at issue in this case. Plaintiffs cite a 1973 DOL Opinion Letter which held as follows:

> Where an employer using § 778.210 makes a contribution to a retirement plan on the basis of the total compensation of all employees, it must be distributed to each and every employee according to his total earnings. This result would not be accomplished under an amendment which would exclude incentive compensation from the total compensation.
>
> You also ask whether, under section 778.210, payments which are excluded from the regular rate under section 7(e) of the Act may be excluded from the total compensation. In our opinion, they may not. Section 7(e) deals with specific kinds of payments which may be excluded from the regular rate, but it does not affect the status of such payments as remuneration for employment. . . . The kinds of payments listed in section 7(e) which are clearly remuneration for employment are excluded from the regular rate by virtue of this section, but nevertheless remain as remuneration to the employee for other purposes.
>
> Whether a bonus is included in the regular rate of pay for overtime purposes, which generally depends on whether it is discretionary or not, likewise does not affect its status as remuneration for employment. As stated previously, all remuneration to the employee must be included in applying section 778.210.

U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter (November 26, 1973), 1973 DOLWH LEXIS 50 at *3–4.

On March 2, 2009, the DOL officially withdrew a January 16, 2009 Opinion Letter that had been signed by the Administrator but not mailed that would have reversed the 1973 Opinion Letter such that an employer could exclude from calculation of "total earnings" for a percentage bonus any compensation that is excludable from the regular rate under the FLSA. U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter (March 2, 2009), 2009 WL 649051. Plaintiffs argue that the withdrawal

of the previous opinion letter has the force of agency action under the Portal-to-Portal Act, while Publix argues that based on the change of presidential administrations, the DOL withdrew *all* unmailed opinion letters in 2009 because they had been drafted by a prior administration. Publix further argues that the January 16, 2009 Opinion Letter withdrew the 1973 Opinion Letter such that it is no longer binding authority. The Court disagrees. The March 2, 2009 DOL Letter indicated that the January 26, 2009 letter was itself withdrawn and therefore "may not be relied upon as a statement of agency policy. *Id.* at *1. To date, the DOL has issued no further opinion letters on the interpretation of 29 C.F.R. § 778.210.

Publix argues that the phrase "total earnings" in the heading of 29 C.F.R. § 778.210 must be interpreted by reference to the wording in the body of the regulation which uses the phrases "straight-time earnings" and "overtime earnings." Publix further argues that Plaintiffs' argument in effect improperly grafts the "all remuneration for employment" language of 29 U.S.C. § 207(e) onto 29 C.F.R. § 778.210. Indeed, the 1973 DOL Opinion Letter itself clearly grafts the "all remuneration for employment" language onto the regulation's "total earnings" phrase. Although the Court concludes that the 1973 Opinion Letter remains in effect, as previously noted, the "ultimate decisions on interpretations of the act are made by the courts," 29 C.F.R. § 785.2. The DOL's 1973 Opinion Letter violates "the usual rule that 'when the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended.'" *Sosa v. Alvarez-Machain*, 542 U.S. 692, 712 (2004) (quoting 2A N. Singer, Statutes and Statutory Construction § 46:06, p. 194 (6th rev.ed.2000)). Similarly, the Court assumes that the DOL's choice of the phrase "total earnings" in 29 C.F.R. § 778.210 was intended to have different

meaning than the phrase "all remuneration for employment" language used in 29 U.S.C. § 207(e). The DOL gives no explanation for its conclusion to the contrary in its 1973 Opinion Letter.

The Court agrees with Publix that the plain language of 29 C.F.R. § 778.210 defines "total earnings" as "straight-time earnings" and "overtime earnings" and that none of these phrases incorporates the phrase "all remuneration for employment." This is consistent with the DOL's Field Operations Handbook which provides that to comply with 29 C.F.R. § 778.210, "[a] total bonus may be distributed to each individual member sharing therein on a percentage basis by dividing the total payroll (both straight time and overtime) of the participating employees into the total bonus." Dep't of Labor, Wage and Hour Division, Field Operations Handbook § 32c05a (1967). Payments such as those challenged in this case are not "straight-time earnings." *See, e.g., Brock v. City of Cincinnati*, 236 F.3d 793, 795 (6th Cir. 2001) (using the phrase "straight-time compensation" repeatedly to refer to compensation for hours worked); *Thompson v. Direct Gen. Consumer Products, Inc.*, No. 3:12-CV-1093, 2014 WL 884494, at *3 (M.D. Tenn. Mar. 5, 2014) ("Her regular compensation is her straight-time pay (88 hours at $10 per hour, or $880). . . ."). The Court concludes that because 29 C.F.R. § 778.210 does not require that Publix include the payments at issue in this case into its percentage-bonus calculations, its Retail Bonus plan satisfies the regulation's requirements for percentage bonuses. Because there is not a genuine issue of material fact in dispute, the Court will enter judgment for Publix on this claim.

## IV.    Conclusion

For the foregoing reasons, the Court will GRANT Defendant's motion for summary judgment (Docket No. 143) in part and DENY it in part and GRANT Plaintiffs' cross-motion for summary judgment (Docket No. 157) in part and DENY it in part. The Court will enter judgment

for Plaintiffs as to Publix's liability for failure to include Holiday Pay in the regular rate, which leaves damages for this claim to be determined. The Court will enter judgment for Defendant as to Plaintiffs' claims that it improperly excluded the Holiday Bonus, tuition reimbursement, Prevention Plus, WIN and Change It awards, and Retail Bonus payments from the regular rate.

An appropriate order is filed herewith.


TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE