# SETTLEMENT AGREEMENT

## AND

## RELEASE OF CLAIMS

**APRIL WHITE, BRUCE BOGACH, ET AL.**

**AND**

**PUBLIX SUPER MARKETS, INC.**

## SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

This Agreement (the "Settlement Agreement"), is entered into by and between Publix Super Markets, Inc. ("Defendant" or "Publix"), and April White and Bruce Bogach (the "Named Plaintiffs"), for themselves and on behalf of the opt-in plaintiffs who have filed consent forms to join this action ("Opt-in Plaintiffs," and together with the Named Plaintiffs, "Plaintiffs"), in the case of *April White and Bruce Bogach, individually, and on behalf of all others similarly situated v. Publix Super Markets, Inc.,* Case No. 3:14-1189, filed in the United States District Court for the Middle District of Tennessee (the "Lawsuit"). This Settlement Agreement is subject to approval by the Court.

## RECITALS

WHEREAS, April White and Bruce Bogach filed this collective action lawsuit pursuant to 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA") against Publix on May 16, 2014, individually and on behalf of other hourly-paid associates who worked in a Publix retail store location.

WHEREAS, Publix filed an Answer denying the material allegations of the Complaint on June 13, 2014.

WHEREAS, on May 8, 2015, Publix filed a Motion for Summary Judgment on all claims in the Complaint.

WHEREAS, on May 27, 2015, the Named Plaintiffs filed an Opposition to Publix's Motion for Summary Judgment and a Cross-motion for Partial Summary Judgment.

WHEREAS, on August 19, 2015, the District Court granted in part and denied in part Publix's motion for summary judgment, and granted in part and denied in part the Named Plaintiffs' motion for summary judgment; specifically, entering judgment for the Named Plaintiffs as to Publix's liability for failure to include Holiday Benefit payments in the regular

rate of pay used to calculate overtime payments for hours worked in a Publix retail store location as hourly-paid associates ("Holiday Benefit"), and entering judgment for Publix as to the Named Plaintiffs' claims that Publix improperly excluded Holiday Bonus payments ("Holiday Bonus"), tuition reimbursement payments, Prevention Plus payments ("Prevention Plus"), WIN and Change IT awards ("WIN/Change It"), and Retail Bonus payments ("Retail Bonus") from the regular rate of pay used to calculate overtime payments for hours worked in a Publix retail store location as hourly-paid associates.

WHEREAS, on August 21, 2015, the Named Plaintiffs filed a Motion for Conditional Certification and Issuance of Notice pursuant to 29 U.S.C. § 216(b) seeking to certify a collective of current and former full-time hourly paid associates who work or worked in a grocery store and worked over 40 hours in one or more weeks during the relevant period but received overtime pay calculated at a rate that did not include Holiday Benefit payments.

WHEREAS, on October 28, 2015, the District Court granted the Named Plaintiffs' conditional certification motion and pursuant to 29 U.S.C. § 216(b) conditionally certified a class consisting of "all current and former Publix Hourly Associates who, at any time between May 16, 2011 and December 27, 2014, worked over 40 hours [as an Hourly Associate in a retail location] in a workweek that included any one of the days (the day before, the day of, or the day after) to which the attendance requirements of Publix's Holiday Pay policy applied and for which they received Holiday Pay."

WHEREAS, notice of the Lawsuit was sent via First Class mail to the conditionally certified class in about December 2015 and approximately 7813 individuals in addition to the Named Plaintiffs have filed consent forms opting into the Lawsuit.

WHEREAS, the parties engaged in extensive settlement discussions for nearly a year, including a mediation on November 27, 2017, in Atlanta, Georgia with a nationally-recognized and well-respected mediator of FLSA collective actions and, after a full-day mediation arrived at an agreement to settle the claims in the Lawsuit as set forth herein.

WHEREAS, Publix denies all allegations and all liability and damages of any kind to anyone regarding these alleged facts or causes of action asserted in the Lawsuit, and denies the Lawsuit could be litigated on a collective action basis, but nonetheless, without admitting or conceding any liability or damages whatsoever or the propriety of collective action status for trial, has agreed to settle on the terms and conditions in this Settlement Agreement to avoid the burden, expense, and uncertainty of continuing the Lawsuit.

WHEREAS, the parties recognize that the final outcome in the Lawsuit, including cross appeals of the District Court's summary judgment ruling, is uncertain and that achieving a final result through the litigation and appeal process would require substantial additional risk, time, and expense.

WHEREAS, Named Plaintiffs have investigated and evaluated the facts and law relating to the claims asserted in the Lawsuit to determine how best to serve the interests of the Opt-in Plaintiffs and believe, in view of the costs, risks, and delay of continued litigation balanced against the benefits of settlement, that the settlement as provided in this Settlement Agreement is in the best interests of the Opt-in Plaintiffs and that the settlement provided in this Settlement Agreement represents a fair, reasonable, and adequate resolution of the Lawsuit.

NOW THEREFORE, the parties, intending to be legally bound and in consideration of the mutual covenants and other good and valuable consideration set forth below, do hereby agree as follows:

## AGREEMENT

1.  <u>Settlement Amount</u>. Defendant agrees to a gross settlement amount of $225,000.00 ("Settlement Amount") to be paid and allocated as set forth below. The Settlement Amount does not include attorneys' fees, costs, expenses, claims administration fees, or the Defendant's employer-portion share of payroll taxes which are separately addressed below.

2.  <u>Allocation of Settlement Amount</u>. The pro rata settlement payments offered to Plaintiffs shall be determined as follows:

    (a)  Calculate an "Individual Numerator," which equals each Plaintiff's unpaid overtime (exclusive of any claims for liquidated damages or interest) resulting from the exclusion of Holiday Benefit payments from the regular rate of pay used to calculate overtime payments from May 16, 2011 through December 27, 2014.

    (b)  Calculate a "Total Denominator," which equals the Individual Numerator of all Plaintiffs, added together.

    (c)  Calculate each Plaintiff's "Share Percentage," which equals the Individual Numerator divided by the Total Denominator.

    (d)  Multiply the Share Percentage by the $225,000 Settlement Amount to determine each Plaintiff's settlement amount.

    (e)  If a Plaintiff's settlement amount equals less than $5, that Plaintiff's "Individual Settlement Payment" will be $5.

    (f)  Remove all Plaintiffs who receive a $5 payment pursuant to step (e), subtract the payments received by those Plaintiffs from the $225,000 Settlement Amount, and repeat steps (a) through (e) for the remaining Plaintiffs, until each Plaintiff's

payment is equal to or greater than $5 to calculate the "Individual Settlement Payment." The sum total of all Individual Settlement Payments after completion of these steps will not exceed $225,000.

3.    <u>Motion for Court Approval; Consequences if Not Approved</u>.  The parties agree to jointly file a Motion for Approval of Settlement with the Court, and a proposed Order Approving Settlement. As part of the Motion for Approval, the parties will submit a proposed Notice of Settlement for Court approval consistent with the terms described in Paragraph 4. Plaintiffs' will separately move for attorneys' fees as described in Paragraph 7. The parties will cooperate and take all necessary steps to effectuate judicial approval of the Settlement Agreement, the Motion for attorneys' fees, and the content of the proposed Notice. The parties agree this settlement is contingent upon both the approval of the Settlement Agreement and the Motion for attorneys' fees, and should the Court not approve either in its entirety, the Parties agree to engage in follow-up negotiations with the intent of resolving the Court's concerns that precluded initial approval, including, if impasse is otherwise reached, by continuation of mediation with mediator Hunter Hughes, and resubmitting settlement for approval. If the settlement is not approved as resubmitted or if the parties are not able to reach another agreement, litigation of the Lawsuit resumes. If litigation of the Lawsuit resumes, the case will proceed as if no settlement has been attempted, the Parties will jointly request a final discovery period and pre-trial schedule, and Defendant may argue that collective treatment is not proper under the FLSA.

4.    <u>Form and Content of Notice and Settlement Payment</u>.  The Notice of Settlement and Individual Settlement Payments will be issued to Plaintiffs as follows:

(a)     All Plaintiffs will be sent a Notice of Settlement in the form approved by the Court, by first class mail, and if an email address is provided by Plaintiffs' counsel, by email. At the time the Notice of Settlement is mailed, Plaintiffs will be mailed a settlement check for their Individual Settlement Payments, calculated as specified in Paragraph 2. The back of the settlement check will contain the following language below the endorsement/signature line: "By signing, endorsing, depositing, cashing, and/or negotiating this check, I hereby understand and agree to the release of overtime claims as set forth in Section [to be filled in consistent with Notice of Settlement] of the Notice I was provided." The check also will include a notice stating that it expires 120 days after the date it is issued. Any Plaintiff who signs, endorses, deposits, cashes, and/or negotiates (including by mobile or remote deposit by phone) his or her check will thereby release all claims in the Lawsuit as described in Paragraph 9(a) and (d).

(b)     The Notice of Settlement will provide Plaintiffs the opportunity to withdraw from the settlement as follows: (1) the Plaintiff may contact the Settlement Administrator via a URL that will be included in the Notice, (2) the Settlement Administrator will then electronically provide such Plaintiff with a withdrawal form that can be filled out, executed, and electronically returned to the Settlement Administrator, and (3) the Plaintiff must electronically return the withdrawal form within 120 days of mailing of the Notice to withdraw from the settlement. Any Plaintiff who seeks to withdraw and is unable to use the URL, may also contact the Settlement Administrator by telephone or email to arrange for a paper copy of the withdrawal form to be provided; the form must be returned within 120 days of

mailing of the Notice to withdraw from the settlement. Any Plaintiff who both timely withdraws from the settlement pursuant to the procedure provided in the Notice of Settlement and does not sign, endorse, deposit, cash, and/or negotiate (including by mobile or remote deposit by phone) the settlement check will release none of his or her claims in the Lawsuit.

(c) Any Plaintiff who both does not timely withdraw from the settlement and does not sign, endorse, deposit, cash, and/or negotiate (including by mobile or remote deposit by phone) the settlement check will release only overtime claims that arise from or relate specifically to the alleged failure to include "Holiday Benefit" payments in the regular rate of pay for purposes of calculating overtime pay for hours worked as an Hourly Associate in a retail store location (which includes all Publix retail stores, but does not include any other Publix employment locations, such as headquarters, distribution facilities, or manufacturing facilities). Expired settlement check amounts will be retained by Defendant.

(d) Notwithstanding the above, Plaintiffs' counsel may communicate with their opt-in clients as frequently as they choose and in whatever manner they choose.

(e) Notwithstanding the above, Defendant shall retain the right and ability to communicate with associates, including Plaintiffs, at its exclusive discretion describing the settlement, explaining the reasons it settled this Lawsuit and describing any changes to policies and procedures that it may in its discretion have made, or make in the future, so long as such communications do not conflict with the Court-approved Notice or the terms of the Settlement Agreement.

5. Settlement Administrator. If the Court grants approval of this Settlement Agreement, the

settlement will be administered by a third-party administrator ("Settlement Administrator"). Defendant will select the Settlement Administrator after consulting with Plaintiffs' Counsel and Plaintiffs' Counsel will have a onetime right to veto Defendant's selection. Once retained, the Settlement Administrator will establish a "qualified settlement fund" within the meaning of Treasury Regulations § 1.468B-1, *et seq.* ("QSF"), to which the Defendant will pay the Settlement Amount and the employer-portion share of taxes as set forth herein and the Attorneys' Fees and Costs as approved by the Court. The Settlement Administrator will be responsible for administering the entire settlement, including all applicable tax withholding, and issuing all applicable tax forms and completing all required tax reporting. Defendant will pay all fees and expenses of the Settlement Administrator separately from and in addition to the Settlement Amount, which fees and expenses will be negotiated separately by Defendant.

6.     Settlement Administration. The parties agree to the following procedure for settlement administration, unless superseded by applicable court order:

   (a)   Within 20 days after the Court approves the Settlement Agreement or the retention of the Settlement Administrator, whichever is later, Defendant will provide the names, mailing addresses, and Social Security Numbers of all Plaintiffs to the Settlement Administrator ("Contact Information"). Plaintiffs' Counsel will also provide the Settlement Administrator with its most updated list of mailing and email addresses for Plaintiffs, which updated information shall be used if in conflict with the Contact Information provided by Defendant and the individual is not a current employee.

   (b)   Within 20 days after the Court approves the Settlement Agreement or the

retention of the Settlement Administrator, whichever is later, Defendant will provide Plaintiffs' Counsel with its final calculations, in a readable and workable format inclusive of applicable formula functions such as a Microsoft Excel spreadsheet or Microsoft Access database, so Plaintiffs' Counsel can validate the accuracy of the data and calculations regarding each Plaintiffs' Individual Settlement Payment as described in Paragraph 2.

(c)    Within 40 days after the Court approves the Settlement Agreement or the retention of the Settlement Administrator, whichever is later, Defendant will provide the Settlement Administrator with the final calculations of each Plaintiff's Individual Settlement Payment, and Defendant will fund the QSF with the $225,000 Settlement Amount and the amount of Attorneys' Fees and Costs approved by the Court.

(d)    Within 45 days after the Court approves the Settlement Agreement or the retention of the Settlement Administrator, whichever is later, the Settlement Administrator will transmit the Attorneys' Fees and Costs to Plaintiffs' Counsel.

(e)    Within 20 days after receiving the final calculations of each Plaintiffs' Individual Settlement Payment from Defendant, the Settlement Administrator will send by First Class Mail the Notices and settlement checks for each Plaintiff's Individual Settlement Payment, and will send a copy of the Notice by email to all Plaintiffs for whom email addresses are available.

(f)    Between 65 and 80 days after mailing the settlement checks, the Settlement Administrator will send a follow-up notice to be approved by the parties to any Plaintiffs who have not negotiated their check. The follow-up notice will remind

Plaintiffs of their rights under this Settlement Agreement and encourage them to negotiate the check.

(g)     On a rolling basis, the Settlement Administrator will make reasonable efforts to obtain valid current addresses through a "skip trace" search for any Plaintiffs whose Notice of Settlement and settlement check is returned as undeliverable. Defendant will provide its best information to and cooperate with the Settlement Administrator to respond to any reasonable inquiries from the Settlement Administrator necessary to complete its responsibilities under this Paragraph. Any and all information provided for the purpose of locating persons whose Notice is returned as undeliverable, including Social Security Numbers, provided by Defendant shall be held in confidence, retained in an electronically secure manner, and shall be used solely for purposes of effectuating this Settlement Agreement.

(h)     For any Plaintiff whose Notice is not returned undeliverable, but who contacts the Settlement Administrator (whether directly or through counsel) to report an address update or a failure to receive Notice and check, the Settlement Administrator will, after verification of identity, stop payment on the first check and re-issue a new check and Notice to the updated mailing address.

(i)     On a rolling basis, the Settlement Administrator will provide the parties with copies of cancelled checks, including the endorsement on the back of the check or other proof of endorsement, for all settlement checks that have been cashed or paid.

(j)     On a rolling basis, the Settlement Administrator will also provide the parties with copies, in a filing-ready format, of any withdrawal forms executed by Plaintiffs. Plaintiffs' Counsel will file with the Court all timely returned withdrawal forms within a reasonable time after receipt from the Settlement Administrator.

(k)     The Settlement Administrator's duties shall also include providing periodic updates to the parties' counsel regarding withdrawals, skip tracing and remailing(s) for any mailings returned undeliverable; responding to class member inquiries; validating a Plaintiff's claim of lost or destroyed check(s) before reissuing replacement checks for such lost or destroyed check(s); and handling and/or correcting any administrative errors such as erroneous payments or check(s) that are both physically deposited at a financial institution and deposited remotely.     At the conclusion of the settlement process, the Settlement Administrator will provide Plaintiffs' counsel with a final updated contact list for Plaintiffs, and will provide both parties a final accounting of Plaintiffs who negotiated their checks, Plaintiffs who withdrew from the Lawsuit, and Plaintiffs who did neither.

(l)     The Settlement Administrator will establish a case-specific settlement administration website containing the Notice information, relevant case documents, and the online withdrawal request form. The Settlement Administrator will also establish a toll-free number and an email address to be included in the Notice. The Settlement Administrator will respond to Plaintiffs' inquiries about the settlement directed to the phone or email address, consistent with agreed language approved by the parties, so long as the Plaintiff does not

make a request for specific legal advice. The Settlement Administrator will forward requests received for specific legal advice to Plaintiff's counsel; however, the Notice shall provide that Plaintiff's counsel is not able to provide tax or bankruptcy law advice.

7. <u>Attorneys' Fees, Costs and Expenses</u>. The parties agreed that, subject to Court approval, Publix will pay $350,000 to Plaintiffs' Counsel in fees, plus an additional $100,000 in advanced litigation costs, and Defendant will not oppose, Plaintiffs' Counsel's petition to the Court seeking approval of such fees and costs. These amounts are in addition to the $225,000 Settlement Amount specified in Paragraph 1.

8. <u>Mediation Costs</u>. Defendant will, separate from and in addition to the Settlement Amount, pay all reasonable mediator costs and expenses to Hunter Hughes.

9. <u>Release</u>. The Release is expressly predicated on Court approval of the Settlement Agreement. The scope of the release for each Plaintiff will be based on whether that Plaintiff signs or otherwise deposits, cashes, and/or endorses (including by mobile or remote deposit by phone) the settlement check and/or timely submits a form withdrawing from the settlement to the Settlement Administrator:

(a) By operation of the entry of the Court Order, and except as to such rights or claims as created by this Agreement, the Named Plaintiffs and Plaintiffs who sign or otherwise deposit, cash, and/or endorse (including by mobile or remote deposit by phone) the settlement check, forever and fully release Defendant, its owners, stockholders, predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, parent companies, divisions, subsidiaries, affiliates, benefit plans, plan fiduciaries and/or administrators, and all persons

acting by, through, under or in concert with any of them, including any party that was or could have been named as a defendant in the Lawsuit (collectively, the "Releasees") from any and all past and present matters, claims, demands, causes of action, and appeals of any kind, whatsoever, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, and whether arising under federal, state, local, or other applicable law, which any such individual has or might have, known or unknown, of any kind whatsoever, expressly limited to only those that are allowed by law for claims brought in the Lawsuit that arise from or specifically relate to the alleged failure to include (1) "Holiday Benefit" payments, (2) "Retail Bonus" payments, (3) "Holiday Bonus" payments, (4) tuition reimbursement payments, (5) "Prevention Plus" prizes, and (6) "WIN" or "Change It" awards as addressed by the Court's summary judgment rulings in the Lawsuit in the regular rate of pay for purposes of calculating overtime pay during pay periods worked as an hourly paid associate in a retail store location (which includes all Publix retail stores, but does not include any other Publix employment locations such as headquarters, distribution facilities, or manufacturing facilities) up to and including the date of approval of this settlement ("Released Claims"). The Released Claims are expressly limited to only those claims asserted in the Lawsuit and any other claims that could have been brought that arise from or relate specifically to the alleged failure to include (1) "Holiday Benefit" payments (2) "Retail Bonus" payments, (3) "Holiday Bonus" payments, (4) tuition reimbursement payments, (5) "Prevention Plus" prizes, and (6) "WIN" or "Change It" awards as addressed by the Court's

summary judgment rulings in the Lawsuit in the regular rate of pay for purposes of calculating overtime pay during pay periods worked as an hourly paid associate in a retail location, including, without limitation, claims under the Fair Labor Standards Act and the statutes, laws, and regulations of all states. The only claims released by a Plaintiff who participates in this settlement are the Released Claims, and the assertion or settlement and dismissal of Released Claims in this Lawsuit shall have no claim preclusion effect on any claims other than Released Claims. This Agreement does not cover, limit, or in any way involve Defendant's discretion with respect to its 401(k) plan and Employee Stock Ownership Plan obligations consistent with the terms of those plans.

(b)     By operation of the entry of the Court Order, and except as to such rights or claims as created by this Agreement, the Plaintiffs who both (1) do not sign or otherwise deposit, cash, and/or endorse (including by mobile or remote deposit by phone) the settlement check and (2) do not timely submit a form withdrawing from the settlement to the Settlement Administrator, forever and fully release Defendant, its owners, stockholders, predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, parent companies, divisions, subsidiaries, affiliates, benefit plans, plan fiduciaries and/or administrators, and all persons acting by, through, under or in concert with any of them, including any party that was or could have been named as a defendant in the Lawsuit (collectively, the "Releasees") from any and all past and present matters, claims, demands, causes of action, and appeals of any kind, whatsoever, whether at common law, pursuant to statute, ordinance, or regulation, in equity or

otherwise, and whether arising under federal, state, local, or other applicable law, which any such individual has or might have, known or unknown, of any kind whatsoever, expressly limited to those that arise from or specifically relate to the alleged failure to include Holiday Benefit payments as addressed by the Court's summary judgment rulings in the Lawsuit in the regular rate of pay for purposes of calculating overtime pay during pay periods worked as an hourly paid associate in a retail store location (which includes all Publix retail stores, but does not include any other Publix employment locations such as headquarters, distribution facilities, or manufacturing facilities) up to and including the date of approval of this settlement ("Released Holiday Benefit Claim"). The Released Holiday Benefit Claim is expressly limited to the Holiday Benefit claim asserted in the Lawsuit and any other claims that could have been brought that arise from or specifically relate to the alleged failure to include Holiday Benefit payments as addressed by the Court's summary judgment rulings in the Lawsuit in the regular rate of pay for purposes of calculating overtime pay during pay periods worked as an hourly paid associate in a retail store location, including, without limitation, claims under the Fair Labor Standards Act and the statutes, laws, and regulations of all states. The only claims released by Participating Plaintiffs under this subparagraph are the Released Holiday Benefit Claim, and the assertion or settlement of Released Holiday Benefit Claim in this Lawsuit shall have no claim preclusion effect on any claims other than the Released Holiday Benefit Claim. This Agreement does not cover, limit, or in any way involve Defendant's

discretion with respect to its 401(k) plan and Employee Stock Ownership Plan obligations consistent with the terms of those plans.

(c)     Plaintiffs who both (1) do not sign or otherwise deposit, cash, and/or endorse (including by mobile or remote deposit by phone) the settlement check and (2) timely submit a form withdrawing from the settlement to the Settlement Administrator, do not release any claims pursuant to this Settlement Agreement. Such Plaintiffs will be deemed to have withdrawn from the litigation by stipulation. Any other releases signed by such Plaintiffs, including releases signed in *Ott v. Publix*, Case No. 3:12-cv-00486 (M. D. Tenn.) will be unaffected. The Settlement Administrator will return the funds for such uncashed checks to Publix within 180 days after mailing the settlement checks.

(d)     In addition, each Plaintiff who participates in the settlement hereby irrevocably and unconditionally releases, acquits, and forever discharges any claim that he or she may have against Released Parties for attorneys' fees, costs, or expenses arising out of his or her claims filed in the Lawsuit that are released under this Settlement Agreement. Each Plaintiff who participates in the settlement further understands and agrees that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees, costs, and expenses for his or her claims filed in the Lawsuit that are released under this Settlement Agreement.

10.     Timing of Attorneys' Fees Payments.     The Settlement Administrator will deliver to Plaintiffs' Counsel Court-approved attorneys' fees, costs, and expenses within 45 days of court approval or within 45 days of retention of the Settlement Administrator, whichever

is later.

11. <u>List of Plaintiffs.</u>  The parties have reviewed the list of individuals who submitted

consent forms to join this Lawsuit. A total of 37 individuals have been identified who are

not within the class of persons to whom notice was directed; indeed, some never worked

for Publix at all. See Attachment A hereto. The parties have stipulated that these 37

individuals will be dismissed without prejudice effective on the date of approval of this

Settlement Agreement. These individuals listed on Attachment A are not deemed

Plaintiffs and will not receive a payment or notice as set forth in Paragraphs 2 and 4.

12. <u>Tax Matters.</u>

    (a)    In connection with Defendant's transfer of funds into the QSF, the following

    definitions will apply:

        (i)    Defendant will be a "transferor" within the meaning of Treasury
Regulation § 1.468B-1(d)(1) to the QSF with respect to the amounts
transferred;

        (ii)    The Settlement Administrator will be the "administrator" of the QSF
within the meaning of Treasury Regulation § 1.468B-2(k)(3), responsible
for causing the filing of all tax returns required to be filed by or with
respect to the QSF, paying from the QSF any taxes owed by or with
respect to the QSF, and applying with any applicable information
reporting or tax withholding requirements imposed by Treasury
Regulation § 1.468B-2(1)(2) or any other applicable law on or with
respect to the QSF, and in accordance with this Settlement Agreement;
and

        (iii)    The Defendant and the Settlement Administrator shall reasonably
cooperate in providing any statements or making any elections or filings
necessary or required by applicable law for satisfying the requirements for
qualification as a QSF, including the relation-back election within the
meaning of Treasury Regulation § 1.468B-1(j).

    (b)    The Settlement Administrator shall promptly provide a current Internal Revenue

    Service ("IRS") Form W-9 of the QSF to the Defendant.

(c)     For tax purposes, 50% of each Plaintiff's payment of his or her portion of the

Settlement Amount pursuant to Paragraph 4 will be treated as wages and 50% of

such payment shall be treated as liquidated damages.    The Settlement

Administrator will withhold from each such payment that is treated as wages the

individual's share of all applicable federal, state, and local income and

employment taxes, and shall report that portion to the IRS and the payee under the

payee's name and social security number on an IRS Form W-2.   The portion of

each such payment that is treated as liquidated damages are not wages and will be

paid without withholding, and will be reported to the IRS and the payee under the

payee's name and social security number on an IRS Form 1099, in Box 3 (or

other similar box should the IRS change the form).   Attorneys' fees and costs paid

pursuant to Paragraph 7 are not wages, and shall be paid without withholding and

such fees and costs shall be reported to the IRS and the applicable attorney under

the law firm's name and taxpayer identification number on an IRS Form 1099 in

Box 14 (or other similar box should the IRS change the form).   The settlement

amounts paid to Plaintiffs' Counsel for fees and costs constitute payment of

Plaintiffs' attorneys' fees and costs on claims under the FLSA and therefore are

within the definition of 26 U.S.C. § 62(e)(4) and subject to the provisions of 26

U.S.C. § 62(a)(20) of the Internal Revenue Code.   Defendant will pay to the QSF

the employer-portion share of the FICA tax and any federal and state

unemployment tax, with respect to payments of the Settlement Amount that are

treated as wages, in addition to the Settlement Amount and Attorneys' Fees and

Costs.   The Settlement Administrator shall notify Defendant of the amount due

from Defendant for payroll taxes within 50 days after approval of the Settlement Agreement or 50 days after retention of the Settlement Administrator, whichever is later. Within 10 days after receipt thereof, Defendant will provide any comments as to the calculation of such amount, and as promptly as practicable thereafter (but in any event by 40 days after receipt of notice from the Settlement Administrator), Defendant will pay the amount as mutually agreed between the Settlement Administrator and the Defendant to the QSF separately from and in addition to the Settlement Amount.

(d)     Each Plaintiff agrees that he or she shall be solely responsible for all taxes, interest, and penalties due with respect to any payment received by him or her pursuant to this Settlement Agreement (other than the employer-portion share of payroll taxes as set forth above or any taxes, interest, or penalties deemed owed by Defendant arising therefrom ("employer obligations")) and shall indemnify, defend and hold Defendant harmless from and against any and all taxes, interest, penalties, attorneys' fees and other costs imposed on Defendant as a result of that Plaintiff's failure to timely pay such taxes that were not employer obligations. Plaintiffs and Defendant shall have no liability or responsibility whatsoever for taxes of the QSF (other than Defendant's funding of the employer obligations as set forth above) or the filing of any tax returns, information reports or other documents with the IRS or any other taxing authority with respect thereto. Defendant shall have no liability or responsibility whatsoever for taxes of the Plaintiffs' Counsel.

(e)     This Agreement does not cover, limit, or in any way involve Defendant's discretion with respect to its 401(k) plan and Employee Stock Ownership Plan obligations consistent with the terms of those plans.

(f)     Per Treasury Department Circular 230, this Agreement is not intended to provide tax advice, and any tax advice contained in this Agreement or any notice summarizing this Agreement is not intended to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code or promoting, marketing, or recommending to another party any transaction or matter addressed herein.

13.    <u>No Admission of Liability or Appropriateness of Class Treatment</u>. By entering into this Settlement Agreement, Defendant admits no liability of any kind, and Defendant expressly denies any liability or wrongdoing.    The parties further agree that this Settlement Agreement does not constitute a determination or admission that any group of similarly situated employees exists to maintain a collective action under the FLSA, and in the event that this Settlement Agreement or a subsequent settlement in the Lawsuit by the parties is not approved by the Court, the parties agree that they will return to the status quo ante and that Defendant may argue that collective treatment is not proper under the FLSA.    This Settlement Agreement shall not be admissible in any court or other proceeding except as necessary in connection with a claim of breach of this Settlement Agreement, an effort to enforce this Settlement Agreement, or for resolution of tax or other legal issues arising from a payment under this Settlement Agreement.

14.    <u>Continuing Jurisdiction</u>.  The U.S. District Court for the Middle District of Tennessee shall retain continuing and exclusive jurisdiction over the parties to this Settlement

Agreement for the purpose of the administration and enforcement of this Settlement Agreement. Any dispute, challenge, question, or the like relating to this Settlement Agreement shall be heard only by this Court, unless the Court rules that it will not hear any such dispute, challenge, question, or the like relating to this Settlement Agreement.

15. Choice of Law. The enforcement of this Settlement Agreement shall be governed and interpreted by and under the laws of the State of Tennessee whether or not any party is, or may hereafter be, a resident of another state.

16. Extension of Time. The parties may, by mutual agreement, agree upon a reasonable extension of time for deadlines and dates reflected in this Settlement Agreement, without further notice to the Court, subject to Court approval.

17. No Waivers, Modifications, Amendments. No waiver, modification or amendment of this Settlement Agreement, whether purportedly made before or after the Court's approval of this Settlement Agreement, shall be valid or binding unless in writing, signed by or on behalf of all parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Settlement Agreement shall not be deemed a waiver of any of the other provisions of this Settlement Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of all of the provisions of this Settlement Agreement.

18. Severability. This Settlement Agreement shall be deemed severable, and the invalidity or unenforceability of any one or more of its provisions shall not affect the validity or enforceability of any of the other provisions.

19. <u>Sole and Entire Agreement</u>. This Settlement Agreement constitutes the entire agreement of Defendant and the Plaintiffs concerning the subjects contained herein, and all prior and contemporaneous negotiations and understandings between those parties shall be deemed merged into this Settlement Agreement; except, however, that this Agreement shall have no effect on or be affected by any prior settlement or other agreement entered into between Defendant and any Plaintiff regarding payment for all or part of any claims released herein.

20. <u>Counterparts</u>. This Settlement Agreement shall become effective upon its execution and subsequent Court approval. The parties may execute this Settlement Agreement in counterparts, and execution in counterparts shall have the same force and effect as if the Named Plaintiffs and Defendant had signed the same instrument. Any signature made and transmitted by facsimile to execute this Settlement Agreement shall be deemed an original signature for purposes of this Settlement Agreement and shall bind the signing party.

21. <u>Corporate Signatories</u>. Each person executing this Settlement Agreement on behalf of any party hereto warrants that such person has the authority to do so, subject to applicable court approval. Any person executing this Settlement Agreement on behalf of a corporate signatory hereby warrants and promises for the benefit of all parties hereto that such person is duly authorized by such corporation to execute this Settlement Agreement.

22. <u>Captions</u>. The captions or headings of the paragraphs in this Settlement Agreement are inserted for convenience or reference only and shall have no effect upon the construction of interpretation of any part of this Settlement Agreement.

[signature page follows]

THE FOREGOING SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS HAS BEEN READ AND FULLY UNDERSTOOD BEFORE THE SIGNING OF THIS AGREEMENT.

_____
**April White**

Dated this _____ day of_____, 2018.

THE FOREGOING SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS HAS BEEN READ AND FULLY UNDERSTOOD BEFORE THE SIGNING OF THIS AGREEMENT.

_____
**Bruce Bogach**

Dated this _____ day of_____, 2018.

THE FOREGOING SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS HAS BEEN READ AND FULLY UNDERSTOOD BEFORE THE SIGNING OF THIS AGREEMENT.

**Publix Super Markets, Inc.**

Date:____1/31/18_____

By:_*Randull Todd Jones*_____

Printed Name:_*Randall Todd Jones*_

Title:__*CEO & President*_____

-23-

THE FOREGOING SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS HAS BEEN READ AND FULLY UNDERSTOOD BEFORE THE SIGNING OF THIS AGREEMENT.

_____ _April White_ _____

**April White**

Dated this _31st_ day of ___January_____, 2018.

THE FOREGOING SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS HAS BEEN READ AND FULLY UNDERSTOOD BEFORE THE SIGNING OF THIS AGREEMENT.

_____

**Bruce Bogach**

Dated this ____ day of_____, 2018.

THE FOREGOING SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS HAS BEEN READ AND FULLY UNDERSTOOD BEFORE THE SIGNING OF THIS AGREEMENT.

**Publix Super Markets, Inc.**

Date:_____       By:_____

Printed Name:_____

Title:_____

Case 3:14-cv-01189   Document 253-1   Filed 01/31/18   Page 25 of 27 PageID #: 11678

THE FOREGOING SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS HAS BEEN READ AND FULLY UNDERSTOOD BEFORE THE SIGNING OF THIS AGREEMENT.

_____
**April White**

Dated this 31st day of January _____, 2018.

THE FOREGOING SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS HAS BEEN READ AND FULLY UNDERSTOOD BEFORE THE SIGNING OF THIS AGREEMENT.

*Bruce Bogach*
_____
**Bruce Bogach**

Dated this ____ day of _____, 2018.

THE FOREGOING SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS HAS BEEN READ AND FULLY UNDERSTOOD BEFORE THE SIGNING OF THIS AGREEMENT.

**Publix Super Markets, Inc.**

Date:_____     By:_____

Printed Name:_____

Title:_____

# SCHEDULE A

| | |
|---|---|
| Anderson, Shawneen | Louis, Chenita |
| Bannerman, Jacqueline | Malone, Maurice |
| Bernier, Dawn | Mattatall, Theresa |
| Bowers, Shaquesta | Menendez, Benjamin |
| Brock, Gary | Messer, Janet |
| Brock, Melissa | Ogundiya, Abimbola |
| Camejo, Martha | Papantonio, Ginette |
| Dobbs, Jean Marie | Pierrelus, William |
| Donley, Alice | Ponder, Sonya L. |
| Ealy, Cathie | Punch, Michelle |
| Eddins, Patricia | Rodriguez, Julio I. |
| Foehl, Sherry | Stringer, Aliesha |
| Ford, Erma | Taylor, Graham |
| Gould, Aerion | Uber, Kyle |
| Hallmon, Kinte | Vega, Flor |
| Haynes, Cynthia | Veltman, George |
| Johnson, Patricia | Walsh, Connie Francis |
| Lewis, Wanda | Wichrowski Jr., Alphonse |
| Lorente, Lazaro | |